# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- X
APEX FUNDING SOURCE, LLC,

                        Plaintiff,

                -against-

BLUE EARTH RESOURCES, INC., SCOTT M.
BORUFF, B & M INVESTMENTS, INC., CENTURY
CONTROLS INTERNATIONAL, INC., GRASSHOPPER
STAFFING, INC., TOMICHI CREEK OUTFITTERS,
INDELIVING HOLDINGS, INC., PLATINUM EQUITY
ADVISORS, LLC, POUR HOUSE CRAFT BEERS, LLC,
SOUTHERN ENERGY ADVISORS, LLC, FUEL
TRADER RESOURCE MANAGEMENT, INC., FUEL
TRADER RESOURCES LLC, and FUEL
TRADER SUPPLY, LLC,

                        Defendants.
-------------------------------------------------------------------- X

Index No. 654552/2023

**AMENDED**
**COMPLAINT**

       Plaintiff Apex Funding Source LLC, (hereinafter "Apex"), by its attorneys, LaRocca

Hornik Rosen & Greenberg LLP as and for its amended complaint against defendants Blue Earth

Resources, Inc., Scott M. Boruff, B & M Investments, Inc., Century Controls International, Inc.,

Grasshopper Staffing, Inc., Tomichi Creek Outfitters, Indeliving Holdings, Inc., Platinum Equity

Advisors, LLC, Pour House Craft Beers, LLC, Southern Energy Advisors, LLC, Fuel Trader

Resource Management, Inc., Fuel Trader Resources LLC, and Fuel Trader Supply, LLC,

respectfully alleges as follows:

## NATURE OF THE ACTION

      1.     This is an action for breach of a written loan agreement, breach of written

guarantees, and fraud.

2.      Apex loaned $5,100,000 to defendant Blue Earth Resources, Inc. ("Blue Earth"). Defendant Scott M. Boruff ("Boruff") fraudulently induced Apex to make the loan to Blue Earth by personally guaranteeing the loan and also guaranteeing and pledging as collateral the assets of ten corporate guarantors.  Boruff represented that he had authority to sign a written guaranty on behalf of each of the ten corporate guarantors but in fact (as Apex later learned) Boruff did not have any such authority for certain of the guarantors.

3.      Apex loaned Blue Earth $5,100,000 based on Boruff's fraudulent and knowingly false representations that: (a) each of the ten corporate guarantors authorized and empowered Boruff to execute the written guaranty in favor of Apex; (b) the written guaranty was a legal and binding obligation of the corporate guarantors; and (c) all the corporate guarantors were solvent and possessed property and assets sufficient to satisfy the guaranteed obligations.

4.      But for Boruff's knowingly false representations and/or concealment of material facts, Apex would not have entered into the loan agreement with Blue Earth.

5.      Blue Earth breached the written loan agreement by failing to pay $4,705,900 in principal and interest to Apex.  Boruff and the corporate guarantors likewise defaulted on their obligations to repay the loan.

6.      As a result, Apex seeks damages against the defendants for the clear default of their payment obligations under the written loan agreement and guaranty, and damages against Boruff individually for his knowingly false representations and concealment of material facts that induced Apex to loan $5,100,000 to Blue Earth.

## THE PARTIES

7.      At all times hereinafter mentioned, Apex was a New York limited liability company.

8. Upon information and belief, Blue Earth is a foreign corporation with a principal place of business at 303 S Concord Street, Knoxville, Tennessee.

9. Upon information and belief, Boruff is an individual residing at 1462 Rudder Lane, Knoxville, Tennessee. Upon further information and belief, Boruff is the Chief Executive Officer of Blue Earth.

10. Upon information and belief, B&M Investments, Inc. ("B&M"), is a foreign corporation with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

11. Upon information and belief, Century Controls International, Inc. ("Century Controls"), is a foreign corporation with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

12. Upon information and belief, Grasshopper Staffing, Inc. ("Grasshopper"), is a foreign corporation with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

13. Upon information and belief, Tomichi Creek Outfitters ("Tomichi"), is a foreign corporation with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

14. Upon information and belief, Indeliving Holdings, Inc. ("Indeliving"), is a foreign corporation with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

15. Upon information and belief, Platinum Equity Advisors, LLC ("Platinum Equity"), is a foreign limited liability company with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

16. Upon information and belief, Pour House Craft Beers, LLC ("Pour House"), is a foreign limited liability with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

17. Upon information and belief, Southern Energy Advisors, LLC ("Southern

3

Energy"), is a foreign limited liability company with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

18. Upon information and belief, Fuel Trader Resource Management, Inc. ("FTRM"), is a foreign corporation with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

19. Upon information and belief, Fuel Trader Resources LLC ("FTR"), is a foreign corporation with a principal place of business at 1462 Rudder Lane, Knoxville, Tennessee.

20. Upon information and belief, Fuel Trader Supply, LLC ("FT Supply"), is a foreign corporation with principal place of business at 3000 Gulf to Bay Boulevard, Suite 403, Clearwater, Florida.

## JURISDICTION AND VENUE

21. Jurisdiction is proper in this Court because Apex is authorized to transact business in the State of New York and defendants transacted business with Apex within New York.

22. Moreover, jurisdiction and venue are proper in New York County because defendants agreed to submit to the jurisdiction of any court in the State of New York including without limitation, New York County, and have waived any and all objections to jurisdiction and venue pursuant to the express terms of the written agreements by and between the parties, as discussed in more detail below.

## FACTUAL BACKGROUND

**A.    Apex Loans $5,100,000 to Blue Earth**

23. On or about September 15, 2022, Blue Earth executed a written Business Loan and Security Agreement (the "Loan Agreement") in Apex's favor as consideration for and to secure a loan from Apex to Blue Earth in the principal amount of $5,100,000 (the "Loan").

24. Pursuant to §6 of the Loan Agreement, Blue Earth agreed to repay the sum of $7,644,900 to Apex, constituting the principal amount of the Loan plus the interest calculated in advance.

25. The Loan Agreement provides that Blue Earth was obligated to make payments to Apex as follows: (a) starting on the first Friday after the date the Loan proceeds were disbursed, weekly payments of $125,000 in principal and interest for eight weeks; (b) starting on the ninth Friday after the date the Loan proceeds were disbursed, weekly payments of $332,000 in principal and interest for twenty weeks; and (c) on the twenty-ninth Friday after the Loan proceed were disbursed, one payment of $4,900 in principal and interest.

26. Pursuant to §30(C) of the Loan Agreement, in the event of a default, Apex was entitled to declare Blue Earth's obligations to pay Apex, including, without limitation, all interest, fees, and expenses (collectively, the "Obligations"), immediately due and payable without notice of any kind to Blue Earth.

27. The Loan Agreement further provides that Blue Earth was obligated to pay to Apex on demand any and all expenses, including, but not limited to, collection costs, all attorneys' fees fixed at 25% of the balance due upon the occurrence of an event of default, and all other expenses of like or unlike nature which may be expended by Apex to obtain or enforce payment of the Obligations either as against Blue Earth or any guarantor or surety of Blue Earth.

28. Blue Earth advised Apex that it intended to use a substantial portion of the Loan proceeds to fund Blue Earth's purchase of: (a) all the issued and outstanding shares of FTRM; and (b) all the issued and outstanding membership interests of FT Supply.

**B.     The Loan is Secured by Boruff's Personal Guaranty and the Guaranty Executed by Boruff as the Authorized Representative of B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, FTRM, and FTR**

29.     To induce Apex to make the Loan to Blue Earth, Boruff executed the Loan Agreement in his individual capacity as a guarantor.

30.     Pursuant to §46 of the Loan Agreement entitled "Personal Guaranty," Boruff absolutely and unconditionally personally guaranteed the prompt payment to Apex of any and all Obligations incurred by Blue Earth pursuant to the Loan Agreement.  Boruff further agreed to repay the Obligations on demand, without requiring Apex first to enforce payment against Blue Earth.

31.     In order to provide additional security for the repayment of the Loan, simultaneously with the execution of the Loan Agreement, B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, FTRM, and FTR (collectively the "Guarantors," each a "Guarantor"), executed a written Payment Guaranty (the "Guaranty') whereby each Guarantor jointly and severally, irrevocably and unconditionally guaranteed to Apex, *inter alia*, the repayment of all amounts due and owing to Apex under the Loan Agreement.

32.     Pursuant to §1.4 of the Guaranty, each Guarantor's liability is primary and there is no obligation on the part of Apex to proceed against Blue Earth or any other Guarantor.

33.     The Guaranty further provides at Section 1.6 that in the event the Guarantors should breach or fail to timely perform any provisions of the Guaranty, the Guarantors shall, within three days of demand by Apex, pay Apex all out-of-pocket costs and expenses (including court costs and reasonable attorneys' fees) incurred by Apex in the enforcement or the preservation of Apex's rights under the Guaranty, provided that Apex is the prevailing party in such action to collect or

enforce same.

34.     Pursuant to §3.1 of the Guaranty, each Guarantor expressly represented and warranted to Apex that it was an owner of a direct interest in Blue Earth and had received, or would receive, direct or indirect benefit from making the Guaranty with respect to the guaranteed obligations.

35.     Each Guarantor further expressly represented to Apex that it was solvent and had sufficient property and assets to repay and satisfy Blue Earth's Obligations under the Loan Agreement in the event of a default.  Specifically, §3.4 of the Guaranty entitled "Guarantor's Financial Condition" states:

> As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, Guarantor (a) is solvent, (b) has assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and (c) has property and assets sufficient to satisfy and repay its obligations and liabilities, including the Guaranteed Obligations.

36.     The Guarantors also unequivocally represented and agreed at §3.5 that the Guaranty was an enforceable, legal, and binding obligation of each Guarantor.  Specifically, §3.5 states in pertinent part:

> This Guaranty has been duly executed and delivered by or on behalf of Guarantor[s] and is a legal and binding obligation of Guarantor[s] and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium or general principles of equity.  The execution and delivery of this Guaranty by Guarantor[s] and the performance of its obligations hereunder will not conflict with any provision of any law or regulation to which Guarantor[s] is subject, or conflict with, result in a breach of, or constitute a default under, any of the terms, conditions or provisions of Guarantor[s'] organizational documents or any material agreement or instrument to which Guarantor[s] is a party or by which it is bound, or any order or decree applicable to Guarantor[s].

7

37.     Apex and Defendants agreed that FT Supply would jointly and severally guarantee to Apex, *inter alia*, the repayment of all amounts due and owing to Apex under the Loan Agreement alongside Boruff, B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, and FTRM.

38.     The Guaranty, however, mistakenly identified FTR as a Guarantor instead of FT Supply.

39.     Defendants clearly understood and agreed that FT Supply (and not FTR) was intended to guarantee the obligations of Blue Earth to Apex.  Among other things: (a) upon information and belief, there was no entity known as "Fuel Trader Resource, LLC;" (b) in connection with Blue Earth's purchase of 100% of the membership interests of FT Supply, Apex, on behalf of Blue Earth, disbursed a portion of the Loan proceeds directly to the seller's assignee; (c) FTRM and FT Supply are the wholly owned subsidiaries of Blue Earth; and (d) prior to entering into the Loan, Blue Earth provided Apex with a copy of the Membership Interests Purchase and Assignment Agreement, whereby Blue Earth agreed to purchase 100% of the membership interests of FT Supply, together with ancillary documents which included: (i) the Company Agreement of FT Supply; (ii) the Amended and Restated Company Agreement of FT Supply; and (iii) the employment agreement of William Eaton, the designated Chief Operating Officer of FT Supply, FTRM, and Blue Earth.

## C.  **Representations Made by Boruff to Apex**

40.     On or about September 15, 2022, Boruff, in his individual capacity and in his capacity as an authorized representative of each Guarantor, expressly represented to Apex in the Guaranty that B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, FTRM, and FTR had agreed to serve as Guarantors and that each such

8

Guarantor had property and assets sufficient to repay and satisfy Blue Earth's Obligations under the Loan Agreement in the event of a default.

41.     Boruff knew and did not disclose to Apex that B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, FTRM, and/or FTR did not on September 15, 2022 (and upon information and belief do not now), possess property or assets sufficient to satisfy and repay the guaranteed obligations.

42.     In fact, Boruff knew and did not disclose to Apex that B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Pour House, Southern Energy, and FTR were not on September 15, 2022 (and upon information and belief are not now), actively transacting business.

43.     Boruff deliberately, intentionally, and knowingly concealed from Apex material facts concerning the Guarantors' financial condition for the intended purpose of inducing Apex to make the Loan to Blue Earth.

44.     On or about September 15, 2022, Boruff further represented to Apex that each Guarantor had granted him all the necessary power and authority to execute on each such Guarantor's behalf and deliver to Apex a written guaranty of the Loan.

45.     Boruff knew that he did not have the requisite power and/or authority to execute the Guaranty on behalf of certain of the Guarantors, including without limitation, Century Controls, Grasshopper, Tomichi, Indeliving, and/or Platinum Equity.

46.     Boruff made the fraudulent, intentional, and knowingly false representations concerning his authority to act on behalf of the Guarantors for the intended purpose of inducing Apex to make the Loan to Blue Earth.

47.     In reliance on Boruff's affirmative representations and representations resulting from his intentional concealment of material facts regarding: (a) Boruff's actual authority to

9

execute the Guaranty as the authorized representative of each Guarantor; and (b) the financial condition of each Guarantor, Apex entered into the Loan Agreement with Blue Earth.

48.     Apex reasonably relied upon Boruff's representations in agreeing to extend credit to Blue Earth and to enter into the Loan Agreement.  Had Apex known that Boruff's representations were false and/or that he intentionally failed to disclose material facts, Apex would not have made the Loan to Blue Earth.

**D.     The Defaults Under the Loan Agreement and Guaranty**

49.     On or about December 6, 2022, Blue Earth defaulted under the Loan Agreement by failing to make the weekly payment of principal and interest due and owing to Apex.

50.     As a result of Blue Earth's failure to make the required weekly payments under the terms of the Loan Agreement, in a letter transmitted on March 24, 2023, Apex's counsel advised Blue Earth that the full amount due and owing under the Loan Agreement, including all principal and interest thereon, was immediately due and payable pursuant to §30(C) of the Loan Agreement.

51.     By letter dated September 1, 2023, Apex demanded that Blue Earth, Boruff, and the Guarantors immediately pay in full the outstanding principal and interest then due in the amount of $4,705,900.

52.     No part of the $4,705,900 has been paid by Blue Earth, Boruff, or the Guarantors, despite due demand.

53.     Apex has incurred, and will incur, costs and attorneys' fees in connection with defendants' breaches and this action.

**AS AND FOR A FIRST CAUSE OF ACTION**
(Breach of Contract Against Defendant Blue Earth)

54.     Plaintiff repeats, reiterates and realleges each and every allegation of the Amended

10

Complaint with the same force and effect as though set forth at length herein.

55.    The Loan Agreement entered into by and between Apex and Blue Earth is a valid and enforceable contract.

56.    Apex complied with its material obligations under the terms of the Loan Agreement on its part to be performed.

57.    Blue Earth has failed to comply with the terms and conditions of the Loan Agreement by reason of its failure to make weekly payments of principal and interest due and owing to Apex under the Loan Agreement, constituting a material breach of the Loan Agreement.

58.    To date, Blue Earth owes Apex the amount of at least $4,705,900 due under the Loan Agreement.

59.    As a result of the foregoing, Blue Earth is liable to Apex in an amount to be determined at trial but in no event less than $4,705,900, together with attorneys' fees, pre-judgment interest, and costs.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Contract Against Defendant Boruff)

60.    Plaintiff repeats, reiterates and realleges each and every allegation of the Amended Complaint with the same force and effect as though set forth at length herein.

61.    Section 46 of the Loan Agreement entitled "Personal Guaranty," provides that the "undersigned (each a "Guarantor"), jointly and severally (if more than one), absolutely and unconditionally guarantee the prompt payment to [Apex], including its successors and assignees, of any Obligations incurred by [Blue Earth] pursuant to this Agreement (this "Personal Guaranty"). Each Guarantor further agrees to repay the Obligations on demand, without requiring [Apex] first to enforce payment against [Blue Earth]."

11

62.     Boruff executed the Loan Agreement in his individual capacity as "Guarantor #1."

63.     Boruff's personal guarantee to pay the Loan was absolute and unconditional.

64.     Blue Earth has defaulted under the Loan Agreement by failing to repay principal and interest due and owing thereunder in the total amount of $4,705,900.

65.     Despite due demand, Boruff has failed to pay any portion of the total amounts due and outstanding under his personal guaranty of the Loan Agreement.

66.     As a proximate result of Boruff's breach of his personal guaranty expressly set forth in §46 of the Loan Agreement, Apex has been damaged.

67.     As a result of the foregoing, Boruff is liable to Apex in an amount to be determined at trial but in no event less than $4,705,900, together with attorneys' fees, pre-judgment interest, and costs.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Breach of Contract Against the Defendant Guarantors)

68.     Plaintiff repeats, reiterates and realleges each and every allegation of the Amended Complaint with the same force and effect as though set forth at length herein.

69.     The Guaranty entered into by and between Apex and the Guarantors is a valid and enforceable contract.

70.     Boruff had actual authority to execute the Guaranty as the representative of each Guarantor.

71.     Boruff had apparent authority to execute the Guaranty as the representative of each Guarantor.

72.     Apex complied with its material obligations under the terms of the Guaranty on its part to be performed.

12

73.     The Guarantors' guarantee to pay the Loan is absolute and unconditional.

74.     Despite due demand, the Guarantors have failed to pay any portion of the total amounts due and outstanding under the Guaranty.

75.     As a proximate result of the Guarantor's breach of the Guaranty, Apex has been damaged.

76.     As a result of the foregoing, B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, FTRM, and FTR are jointly and severally liable to Apex in an amount to be determined at trial but in no event less than $4,705,900, together with attorneys' fees, pre-judgment interest, and costs.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Fraud Claim Against Defendant Boruff)

77.     Plaintiff repeats, reiterates and realleges each and every allegation of the Amended Complaint with the same force and effect as though set forth at length herein.

78.     On or about September 15, 2022, Boruff represented to Apex that each Guarantor had agreed to guarantee the Loan and that each such Guarantor had property and assets sufficient to repay and satisfy Blue Earth's Obligations under the Loan Agreement in the event of a default.

79.     Boruff knew and intentionally failed to disclose to Apex that most, if not all, of the Guarantors did not have property or assets sufficient to repay and satisfy Blue Earth's Obligations under the Loan Agreement in the event of a default.

80.     Boruff had a duty to disclose to Apex the essential facts and his particular and superior knowledge concerning each Guarantor's financial condition.

81.     On or about September 15, 2022, Boruff represented to Apex that each Guarantor had granted him all the necessary power and authority to execute on the Guarantor's behalf and

13

deliver to Apex the written Guaranty.

82. Boruff knew that he did not have the necessary power or authority to execute the Guaranty on behalf of all the Guarantors, including without limitation, Grasshopper, Tomichi, Indeliving, and/or Platinum Equity.

83. Boruff knowingly, intentionally, and wantonly made the above-described misrepresentations and concealed the material facts for the intended purpose of inducing Apex to enter into the Loan Agreement with Blue Earth.

84. Apex reasonably and justifiably relied upon Boruff's false and fraudulent representations regarding his authority to execute the Guaranty as an authorized representative of each Guarantor when it entered into the Loan Agreement and accepted the Guaranty.

85. Apex did not have knowledge of the false nature of Boruff's representations and his concealment of material facts at the time of making the Loan to Blue Earth.

86. But for Boruff's false representations and concealment of material facts, Apex would not have entered into the Loan Agreement with Blue Earth and/or accepted the Guaranty.

87. As the direct and proximate result of Boruff's knowingly false and fraudulent representations and concealment of material facts, Apex has been damaged in an amount to be determined at trial but in no event less than $4,705,900.

88. Because Boruff's acts were wanton, intentional, fraudulent, and willful, Apex is entitled to an award of punitive damages against Boruff in an amount to be determined at trial but in no event less than $5,000,000.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Reformation of the Guaranty Based upon Scrivener's Error)

89. Plaintiff repeats, reiterates and realleges each and every allegation of the Amended

14

Complaint with the same force and effect as though set forth at length herein.

90.     Apex and Defendants reached an agreement that FT Supply would jointly and severally guarantee to Apex, *inter alia*, the repayment of all amounts due and owing to Apex under the Loan Agreement alongside Boruff, B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, and FTRM.

91.     Identifying FTR, rather than FT Supply, as a Guarantor in the Guaranty was a scrivener's error reflecting a mistake in the reduction of the parties' agreement to writing.

92.     As a result of the scrivener's error, the Guaranty did not accurately reflect the parties' actual agreement to name FT Supply as a Guarantor.

93.     Apex has no adequate remedy at law.

94.     By reason of the foregoing, Apex is entitled to reformation of the Guaranty such that the terms thereof identify FT Supply as a Guarantor.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Reformation of the Guaranty Based upon Mutual Mistake)

95.     Plaintiff repeats, reiterates and realleges each and every allegation of the Amended Complaint with the same force and effect as though set forth at length herein.

96.     From the inception of the parties' negotiations, Apex and Defendants intended that FT Supply would be named as a Guarantor in the Guaranty.

97.     The parties did not recognize that the Guaranty mistakenly named FTR as a Guarantor, and not FT Supply.

98.     The failure to detect the error changed the nature of the Loan transaction in that there was no entity known as "Fuel Trader Resource, LLC" and FT Supply was, and still is, a wholly owned active and operating subsidiary of Blue Earth.

15

99.     As a result of the mutual mistake, the Guaranty did not reflect the parties' actual agreement to name FT Supply as a Guarantor.

100.     Apex has no adequate remedy at law.

101.     By reason of the foregoing, Apex is entitled to reformation of the Guaranty such that the terms thereof identify FT Supply as a Guarantor.

WHEREFORE, plaintiff Apex demands judgment against defendants Blue Earth, Boruff, B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, FTRM, FTR, and FT Supply as follows:

(a)     On the First Cause of Action, for breach of contract against Blue Earth, damages in an amount to be determined at trial but in no event less than $4,705,900;

(b)     On the Second Cause of Action, for breach of contract against Boruff, damages in an amount to be determined at trial but in no event less than $4,705,900;

(c)     On the Third Cause of Action, for breach of contract against B&M, Century Controls, Grasshopper, Tomichi, Indeliving, Platinum Equity, Pour House, Southern Energy, FTRM, FTR, and FT Supply damages in an amount to be determined at trial but in no event less than $4,705,900;

(d)     On the Fourth Cause of Action, for fraud against Boruff, damages in an amount to be determined at trial but in no event less than $4,705,900, together with punitive damages of $5,000,000;

(e)     On the Fifth Cause of Action for Reformation, reforming and correcting the Guaranty to accurately identify Fuel Trader Supply, LLC as a Guarantor;

(f)     On the Sixth Cause of Action for Reformation, reforming and correcting the Guaranty to accurately identify Fuel Trader Supply, LLC as a Guarantor;

16

(g)      Together with attorney's fees, pre-judgment interest, all costs, expenses, and such

and other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 11, 2024

LAROCCA HORNIK ROSEN
& GREENBERG LLP

/s/ *Amy D. Carlin*

By: _____

Amy D. Carlin
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4835
E: ACARLIN@LHRGB.COM
*Attorneys for Plaintiff*
*Apex Funding Source, LLC*

17