IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brabham Oil Company, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Fuel Trader Supply, LLC, Blue Earth Resources, Inc., Fuel Trader Resource Management, Inc, William R. Eaton, Scott M. Boruff, Charles B Lobetti, III, Gary W. Ford, Jr., <br><br> Defendants. | C/A No. 5:24-cv-1170-JFA <br><br><br> **MEMORANDUM OPINION AND ORDER** |

I.   **INTRODUCTION**

This matter is before the Court over a dispute concerning $1,500,000.00 ("Escrowed Funds") held in trust at Galivan White and Boyd, P.A. Currently pending before the Court are Defendants Gary W. Ford ("Ford") and William R. Eaton's ("Eaton") Expedited Motion for Preliminary Injunction (ECF No. 123), Defendant Eaton's Motion for Release of Funds held in Trust (ECF No. 113), Defendants Fuel Trader Supply, LLC ("FTS"), Blue Earth Resources Inc. ("BERI"), Fuel Trader Resource Management, Inc. (FTRM), Scott M. Boruff ("Boruff"), and Charles B. Lobetti's ("Lobetti") Expedited Motion for Approval to Distribute Funds (ECF No. 117), and Ford's Motion for Summary Judgment as to his crossclaims against FTS, BERI, and FTRM for indemnification (ECF No. 112).

This Court held an emergency hearing on November 6, 2025, at the request of the parties to hear argument on the Expedited Motion for Approval to Distribute Funds and the

Expedited Motion for Preliminary Injunction. Thereafter, this Court received a Reply brief for the Preliminary Injunction, and a Response and Reply to Defendant Eaton's Motion for Release of Funds held in Trust. The time for a Response to the Expedited Motion for Approval to Distribute Funds has elapsed without the filing of a Response; however, the briefing for the Expedited Motion for Preliminary Injunction squarely addresses the arguments in that motion. Thus, the Motion for Preliminary Injunction (ECF No. 123), Defendant Eaton's Motion for Release of Funds (ECF No. 113), and the Motion for Approval to Distribute Funds (ECF No. 117) are ripe for review.

For the reasons discussed herein, Defendant Eaton and Ford's Motion for a Preliminary Injunction is denied, the Settling Defendants' Motion for Approval to Distribute Funds is dismissed as moot, Defendant Eaton's Motion for Release of Funds is denied, and Defendant Ford's Motion for Summary Judgment insofar as it requests a release of funds is denied.

## II.   FACTS

This case arises out of a longstanding business relationship between Plaintiff Brabham Oil Company, Inc. ("Brabham") and FTS, FTRM, and BERI (collectively "Corporate Defendants"). In 2018, Plaintiff entered into buy-sell agreements with FTS whereby Plaintiff paid FTS for the purchase of certain fuel products. (ECF No. 27, p. 6). FTS would then purchase products, sell them to customers, and repay Plaintiff for money received plus interest. *Id.* It appears this buy-sell arrangement proceeded without incident from 2018 until 2022. In September 2022, BERI acquired FTS and FTRM. Ultimately, a

breakdown in this buy-sell arrangement occurred. Plaintiff sued the Corporate Defendants as well as Eaton, Ford, Lobetti, and Boruff—officers of the Corporate Defendants in their official capacities—on several causes of action. Importantly, Eaton and Ford filed cross claims against the Corporate Defendants for indemnity of any costs and judgments against them arising from Plaintiff's claims. (ECF Nos. 68 & 72).

FTS, FTRM, BERI, Boruff, and Lobetti (collectively "Settling Defendants") recently entered into a settlement agreement with Brabham. Two Defendants are not a party to that settlement agreement, Eaton and Ford ("Non-Settling Defendants"). At the outset of this action prior to its removal to this Court, Plaintiff obtained an *ex parte* Temporary Restraining Order ("TRO") in state court which froze certain assets of the Corporate Defendants' accounts. (ECF No. 123, p. 2). To resolve the TRO and allow the Corporate Defendants to keep operating, Plaintiff and the Corporate Defendants entered into a consent order. *Id.* This consent order was entered by the Court of Common Pleas for Bamberg County, South Carolina and provided that $1,500,000.00 of the "monies held in the FTS JP Morgan Account" be transferred to the Gallivan White & Boyd Trust account "until further Order and direction of this court *or pursuant to the joint agreement and direction of both the Plaintiff and FTS*." (ECF Nos. 125, p. 2 & 117-1, p. 3 ¶ 3) (emphasis added).

The Settling Defendants seek approval from this Court to distribute the funds held in trust to satisfy the settlement agreement entered into with Plaintiff. (ECF No. 117). The Settling Defendants indicate they intended to fulfill the terms of the settlement agreement by disbursing the funds without seeking approval of this Court; however, they received an

3

email from Defendant Eaton's counsel regarding possible ethical considerations. (ECF No. 117, pgs. 3-4). Eaton's counsel averred in his email that Eaton and Ford's pending motions concerning their claims of indemnity and advancement made it so these funds could not be ethically distributed without setting aside a sufficient amount for the Non-Settling Defendants' defense costs. (ECF No. 117-2). Thus, the Settling Defendants filed their Motion for Approval to Distribute Funds requesting this Court approve the intended disbursement. (ECF No. 117, pgs. 3-4). Shortly thereafter, the Non-Settling Defendants filed their Motion for a Preliminary Injunction to prevent the disbursement of these funds. (ECF No. 123).

### III.   STANDARD OF REVIEW

A party seeking a preliminary injunction must establish four elements: (1) that they will likely succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that the granting of the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999); Fed. R. Civ. P. 65.

"The Fourth Circuit no longer recognizes a flexible interplay among these criteria. Instead, each requirement must be fulfilled as articulated." *De La Fuente v. S.C. Democratic Party*, 164 F. Supp. 3d 794, 798 (D.S.C. 2016) (internal quotations omitted) (citation omitted).

## IV. DISCUSSION

This Order addresses the Non-Settling Defendants' Motion for a Preliminary Injunction (ECF No. 123), the Settling Defendants' Motion for Approval to Distribute Funds (ECF No. 117), Defendant Eaton's Motion for Release of funds (ECF No. 113), and Defendant Ford's Motion for Summary Judgment insofar as it requests a release of the Escrowed Funds (ECF No. 112).[1]

### (A)     Expedited Motion for Preliminary Injunction

The Non-Settling Defendants filed this motion to "temporarily enjoin the Settling Defendants from disbursing the Escrowed Funds as part of a settlement agreement with Plaintiff until a reasonable portion of the Escrowed Funds is allocated to the Moving Defendants to fund their continued litigation expenses." (ECF No. 123, p. 2). The Non-Settling Defendants opine they "are entitled to a portion of the Escrowed Funds to fund their continued defense of the lawsuit brought against them by Plaintiff for actions undertaken while serving as executives of FTS and/or BERI." *Id.* at 1-2. They argue that "[g]iven Ford is being sued in his capacity as President of BERI and Eaton is being sued in his capacity of COO of BERI as well as manager and an executive of FTS and FTRM, they are contractually and statutorily entitled to the advancement of litigation expenses." *Id.* at 2. The Settling Defendants and Plaintiff oppose this request and seek approval from

---

[1]  The Court declines at this time to decide the merits of Ford's claims for indemnification and advancement.

5

this Court for the disbursement of funds to satisfy the settlement agreement. (ECF Nos. 117 & 125 & 124).

    (i)    <u>Likelihood of Success on the Merits</u>

First, given the below determination that the following factors required for preliminary injunctive relief disfavor the Non-Settling Defendants, further discussion of the remaining *Winter* factors is unnecessary. However, the Court will briefly address the arguments regarding the likelihood of success on the merits.

The crux of Ford and Eaton's argument is that "Ford and Eaton are each former executives of the Corporate Defendants that are contractually entitled under the terms of their respective employment agreements to be indemnified by the Corporate Defendants." (ECF No. 123, p. 4). Ford served as the President of BERI from September 2022 until 2023. *Id.* Ford's employment agreement with BERI in a section labeled "indemnity" provides in relevant part:

> The Company shall, during Executive's employment with the Company and thereafter, indemnify Executive to the fullest extent permitted by law and by its Articles of Incorporation and By-laws and shall assure that Executive is covered by the Company's D&O policies, if available, and any other insurance policies that protect employees as in effect from time to time. Such insurance policies shall be with providers, and provide for coverage in amounts customary and reasonable within the industry in which the Company operates.

*Id.*

Eaton is being sued in his capacity as COO of BERI and for his positions in FTS and FTRM. *Id.* Eaton's employment contract has a similar indemnity provision to Ford's

and additionally specifically provides for the advancement of defense fees and costs. The agreement states in relevant part:

> Executive shall be indemnified and held harmless by the Company from and against any liabilities, costs, claims, and expenses, including all costs and expenses incurred in defense of any Proceeding (including attorney's fees). Costs and expenses incurred by the Executive in defense of such Proceeding (including attorney's fees) shall be paid by the Company in advance of the final disposition of such litigation . . .

*Id.* at 5

Ford and Eaton further aver they are entitled to equitable indemnification by the Corporate Defendants which will be set forth in their respective forthcoming Motions for Summary Judgment. *Id.*

Conversely, the Settling Defendants opine Ford and Eaton have failed to make a "clear showing" they are likely to succeed on the merits. (ECF No. 125, p.4 (citing *Bishop of Charleston v. Adams*, 538 F. Supp. 3d 608, 615 (D.S.C. 2021)). Specifically, the Settling Defendants allege Eaton's claim of equitable indemnity against the Corporate Defendants will fail because Eaton was a joint tortfeasor and as such will not be entitled to equitable indemnity. *Id.* at 5. Further, they allege Ford will not be entitled to equitable indemnity from the Corporate Defendants because Ford had no relationship with FTS sufficient to establish a claim of equitable or contractual indemnity because he was not a director, officer or employee of FTS but rather of BERI, and any relationship with BERI "would never permit him to collect upon the FTS Funds owned by FTS." *Id.* at 7.

7

Only Ford has filed a Motion for Summary Judgment regarding his claims of indemnity. (ECF No. 112). It appears a forthcoming similar motion is expected from Eaton. Thus, at this stage an absolute determination of whether the Non-Settling Defendants are entitled to advancement or indemnity need not be made. However, a finding of a likelihood of success on the merits is not "tantamount to [a] decision [] on the underlying merits," and courts should not "improperly equate [] 'likelihood of success' with 'success.'" *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1034 (D.S.C. 2021) (citation omitted). There appears to be some merit to the cross claims. Considering the following factors weigh against granting injunctive relief, the Court gives credence to the Non-Settling Defendants' position. Accordingly, the Court continues its analysis as if a likelihood of success on the merits is established.

(ii)     Irreparable Harm

In arguing irreparable harm, the Non-Settling Defendants allege that if these funds are disbursed, the Corporate Defendants "will no longer [have] funds available to the Moving Defendants to satisfy the indemnification obligations of the Corporate Defendants." (ECF No. 123, p. 6). In response, the Settling Defendants claim "Eaton and Ford's indemnity claims are the epitome of a claim which can be remedied at a later time with money damages. Eaton and Ford merely possess disputed claims for reimbursement of attorney's fees. If successful, they can be made whole by being awarded a monetary judgment." (ECF No. 125, p. 8).

8

"Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (citation omitted). However, "[e]ven if a loss can be compensated by money damages at judgment, [ ] extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction. For example, the Seventh Circuit has noted that even where a harm could be remedied by money damages at judgment, irreparable harm may still exist … where 'damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.'" *Id.* (citing *Roland Mach. Co. v. Dresser Indus., Inc*., 749 F.2d 380, 386 (7th Cir.1984)). "These situations are quite narrow, reflecting instances where the harm suffered by the plaintiff from denying the injunction is especially high in comparison to the harm suffered by the defendant from granting it." *Hughes Network Sys. Inc.,* 17 F.3d at 694.

Ford and Eaton allege that representations previously made by the Settling Defendants evidence that the Corporate Defendants may be approaching insolvency sufficient to show "extraordinary circumstances." (ECF Nos. 123, p. 6 & 107). The Non-Settling Defendants quote the Settling Defendants in relevant part stating that "[n]either [FTS] nor [BERI] have any current or expected income. [BERI] currently has approximately $1,709.29 cash on hand. [FTS] has approximately $13,427.17 cash on hand. These amounts continue to be diminished by operating expenses." *Id.* Thus, Ford and Eaton assert that "approximately $14,000 would be left if the Settling Defendants are permitted

9

to use the Escrowed Funds, [ ] leaving Ford and Eaton without funds to cover their defenses in this matter," and pending claims implicating the Corporate Defendants in New York may further weaken this financial condition. (ECF No. 123, pgs. 7-8).

Here, Ford and Eaton's defense fees and costs have been paid from an eroding D&O policy obtained by the Corporate Defendants. This policy has not yet run out; however, Ford and Eaton claim the policy will soon be depleted. *Id.* at 6. The Court agrees with Brabham and the Settling Defendants such that this situation does not present an extraordinary circumstance where monetary damages may create irreparable harm. First, at the time of these, filings Ford and Eaton had not yet incurred any expenses not covered by the presently funded D&O policy and there is no indication expenses have since accrued. *Sauer-Danfoss (US) Co. v. Nianzhu Luo, No*. CA 8:12-3435-HMH, 2012 WL 6042831, at *1 (D.S.C. Dec. 5, 2012) ("'When analyzing the irreparable harm element, there are two inquiries: 1) whether the plaintiff is suffering actual and imminent harm; and 2) whether that harm is truly irreparable, or whether it can be remedied at a later time with money damages.'"(citation omitted)).

Further, the Corporate Defendants are not engaging in a non-ordinary operation such that it appears they are attempting to liquidate assets prior to the entry of a final judgment without the court's awareness. *See e.g.* U.*S. ex rel. Taxpayers Against Fraud v. Singer Co*., 889 F.2d 1327, 1328 (4th Cir. 1989). Rather, the Settling Defendants are seeking to settle their potential liabilities with Plaintiff. Thus, the court agrees with the Settling Defendants that "it would be extraordinary legal gymnastics [ ] if an indemnity

crossclaim plaintiff could prevent an indemnity crossclaim defendant from settling a case against it with the actual Plaintiff because of the potential impact on the cross claim plaintiff's ability to collect its potential indemnity judgment." (ECF No. 125, p. 8).

Finally, as will be discussed below, even if the Corporate Defendants were to be insolvent such that Ford and Eaton will be unable to collect a potential money judgment, there is no indication Ford and Eaton have any right to these specific Escrowed Funds. A review of the consent order entered into at the outset of this case between Plaintiff and the Corporate Defendants reveals these Escrowed Funds were set aside for the purpose of resolving the previously entered TRO. (ECF No. 117-1). The consent order specifically states that the Escrowed Funds are to be held and not distributed "until further Order and direction of this Court or pursuant to the joint agreement and direction of both the Plaintiff and FTS." *Id.* at 3. Thus, the intention of the consent order appears to be to allow this money to be used to settle the claims between Plaintiff and FTS. It seems illogical to suggest two Defendants not a party to the consent order can now benefit from Plaintiff's proactive preservation of the Escrowed Funds.

Accordingly, the Non-Settling Defendants fail to show an extraordinary circumstance to justify a finding of irreparable harm.

(iii) <u>Balance of the Equities</u>

While both factors (ii) and (iv) also weigh against granting injunctive relief, a balance of the equities is perhaps the most compelling reason to deny the requested relief.

The Non-Settling Defendants make three arguments that the balance of the equities favors granting injunctive relief. (ECF Nos. 123, pgs.7-8 & 133, p. 7). First, Ford and Eaton state it would be unfair for Lobetti and Boruff, the two individual defendants that are among the Settling Defendants, to benefit from the settlement agreement and thus leave Ford and Eaton without recourse regarding future expenses. (ECF No. 123, p. 7). Second, Ford and Eaton argue that denying the relief sought would be inequitable because the Corporate Defendants have had access to the non-escrowed funds such that they have been able to use that to fund their defense. *Id.* Third, Ford and Eaton note their employment contracts pre-date the breach of the buy-sell agreement between the Corporate Defendants and Plaintiff. (ECF No. 133, p. 7). They aver "it would be inequitable to allow Plaintiff and the Settling Defendants to settle claims that arise from a contract entered into <u>after</u> the employment contracts from which the Moving Defendants' rights to the advancement of funds and indemnity arise." *Id.* (emphasis added in original).

The Non-Settling Defendants' arguments fail. First, while Lobetti and Boruff may benefit from the settlement agreement, that fact does not make denying preliminary injunction inequitable. Ford and Eaton cite no authority, and this Court is aware of none that provide a failure to include all defendants in a settlement agreement such that the remaining defendants may be prejudiced by remaining in the suit is inequitable. Second, the Court disagrees with the Non-Settling Defendants' argument that the Corporate Defendants' access to the non-escrowed funds to fund their defense and potentially include those funds as terms of the settlement agreement makes the balance of the equities tip in

12

their favor. It is this Court's understanding that while Ford and Eaton did not have access to these non-escrowed funds by virtue of not being one of the Corporate Defendants, their defense costs have been covered by an eroding D&O policy throughout this litigation. Thus, the Undersigned does not find it inequitable such that the balance of the equities tip in Ford and Eaton's favor that the Corporate Defendants have had access to the non-escrowed funds just as Ford and Eaton have had access to the D&O policy.

Finally, the Court rejects Ford and Eaton's third argument. Whether the employment agreements pre-date the allegedly breached buy-sell agreement with Brabham is immaterial. Such a finding would necessitate this Court to determine that employment agreements with corporate officers that pre-date that company's breach of a contract grant the corporate officer's entitlement to indemnity and advancement of costs at a greater priority than the breached party. This determination would mean a corporate officer that works for a company that may have very well been a party to that breach can hold up a settlement agreement with that breached party by virtue of having an earlier executed employment agreement. The Non-Settling Defendants cite no authority, and this court is aware of none that would support such a proposition.

Further, upon a review of the Settling Defendants and Plaintiff's position, the balance of the equities tip in favor of denying injunctive relief. Plaintiff and the Settling Defendants have entered into a settlement agreement. Granting injunctive relief here would prevent a term of this settlement agreement from being completed. This would then require Plaintiff and the Settling Defendants to continue litigating despite having successfully

enterd into a settlement agreement. A balance of the equities does not favor such a result. Rather, these facts tip the scales in favor denying injunctive relief.

Accordingly, the balance of the equities tips greatly in favor of denying the injunctive relief sought.

(iv)    <u>Public Interest</u>

Finally, public interest also tips in favor of denying injunctive relief. Ford and Eaton aver the public interest tips in their favor because of the importance for courts to uphold contracts. Additionally, they argue "it does not serve public policy for former executives of a company to be left without funds to honor contractual provisions in their employment contracts for claims brought against them while acting as executives of the company." (ECF No. 133, p. 8).

It is important to be precise on what this injunctive relief asks for. The Court is not disputing the importance of upholding contracts and the utility of indemnity and advancement. Here, Ford and Eaton ask not that their claims for indemnity and advancement be upheld, rather they ask this Court to set aside portions of the Escrowed Funds to satisfy these potentially viable claims. Thus, it is the status of the Escrowed Funds that must be evaluated, not simply Ford and Eaton's cross claims.

The Escrowed Funds are subject to the consent order entered in this case prior to its removal to the Undersigned. The consent order—of which Ford and Eaton were not a party—explicitly states: "The Escrowed Funds shall be held and not distributed from the

Gallivan Trust Account until further Order and direction of this Court or pursuant to the joint agreement and direction of both the Plaintiff and FTS." (ECF No. 117-1, p. 3). By virtue of the law-of-the-case doctrine, "a court should normally stick to its own prior orders in the same case, as well as the prior orders of a coordinate transferor court …." *W. Virginia Coal Workers' Pneumoconiosis Fund v. Bell,* 781 F. App'x 214, 223–24 (4th Cir. 2019) (citation omitted). A Court's adherence and enforcement of prior orders in the case is certainly in the public interest. The terms of the prior consent order are clear such that Plaintiff and FTS may agree to distribute the funds. The intention of this order appears to have been to allow these funds to be used to settle the claims between Plaintiff and FTS. Such an agreement has apparently come to fruition. The public interest weighs in favor of allowing such agreement to take place.

Accordingly, because Ford and Eaton have failed to show they face irreparable harm should injunctive relief be denied, and a balance of the equities and measuring of the public interest tip against the granting of injunctive relief, the Motion for Preliminary Injunction (ECF No. 123) is denied.[2]

---

[2] Ford and Eaton have failed to show, both when asked at the hearing and in briefing, that they intend or are capable of presenting a bond. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Accordingly, the failure to present a bond constitutes an additional independent basis to deny the Non-Settling Defendants' request for injunctive relief.

**(B) Expedited Motion for Approval to Distribute Funds**

The Settling Defendants and Plaintiff with their Expedited Motion for Approval to Distribute Funds ask this "Court's approval of Gallivan White & Boyd's distribution of [the Escrowed Funds] on behalf of [FTS] to Plaintiff pursuant to a Settlement Agreement entered into between the FTS Defendants and Plaintiff." (ECF No. 117, p. 1). Ford and Eaton's arguments for why the Court should answer this question in the negative are squarely addressed by the Court's above denial of the Preliminary Injunction.

The Court declines to answer the Settling Defendant's question. "[F]ederal courts do not exist to answer questions. They exist to redress injuries." *Wells v. Johnson*, 150 F.4th 289, 295 (4th Cir. 2025). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes[,] [and] do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); U.S. Const. art. III, § 2, cl. 1. The consent order clearly states the Escrowed Funds may be released by Order of the Court or by joint agreement of Plaintiff and FTS. (ECF No. 117-1). The Settling Defendants are not asking this Court to order a release of the funds. Rather, they ask the Undersigned to approve an agreement apparently already entered into between Plaintiff and FTS. Because one of the terms of the consent order allowing for the Escrowed Funds to be released has been satisfied—agreement by Plaintiff and FTS—the Court does not have an injury to redress. Stated differently, the parties that originally agreed to preserve the Escrowed Funds have now agreed to their release. The use of these specific funds is not a claim in any pleading, and the satisfaction of one condition precedent in the

consent order alleviates any oversight this Court previously possessed over the Escrowed Funds.

Accordingly, the Expedited Motion for Approval to Distribute Funds (ECF No. 117) is dismissed as moot.

### (C)     Eaton's Motion for Release of Funds Held in Trust and Ford's Motion for Summary Judgment insofar as it requests a release of funds

Defendant Eaton with his Motion for Release of Funds held in Trust (ECF No. 113), and Ford with his Motion for Summary Judgment (ECF No. 112) ask this Court to release the Escrowed Funds held in trust to pay their attorney's fees and costs incurred in this matter.

First, this Court rejects the arguments claiming these requests are moot due to the Settlement Agreement which was apparently signed before these motions were filed with the Court. (ECF No. 138, p. 2). However, this Court nonetheless denies Defendant Eaton's Motion for Release of Funds held in Trust and Ford's Motion for Summary Judgment only insofar as the motion requests a release of the Escrowed Funds.

The consent order that controls the release of the Escrowed Funds states the funds may be released by Order of this Court or by agreement of Plaintiff and FTS. The Court sees no reason to release these Escrowed Funds to satisfy potentially viable claims of indemnity and advancement for the same reasons stated above in denying Ford and Eaton's Preliminary Injunction. This consent order was entered with the intention of preserving the

Escrowed Funds for the potential satisfaction of a judgment between Plaintiff and the Defendants. It does not seem logical for this Court to grant an order allowing these funds to now be used to support the litigation expenses of two Defendants regardless of whether further proceedings may show they are entitled to indemnity and/or advancement. Accordingly, Defendant Eaton's Motion for Release of Funds held in trust is denied. Similarly, Ford's Motion for Summary Judgment only insofar as it requests a release of the Escrowed Funds is denied.

The merits of Eaton's claims of indemnity and advancement may be addressed at Summary Judgment. Further, upon the filing of all dispositive motions a hearing will be promptly scheduled, if necessary, to address all pending dispositive motions, including the merits of (ECF No. 112).

## V.     CONCLUSION

For all of the reasons stated above, Ford and Eaton's Motion for Preliminary Injunction (ECF No. 123) is denied; the Settling Defendants' Motion for Approval to Distribute Funds (ECF No. 117) is dismissed as moot; Eaton's Motion for Release of Funds held in Trust (ECF No. 113) is denied; and Ford's Motion for Summary Judgment (ECF No. 112), only insofar as it requests a release of funds, is denied.

IT IS SO ORDERED.

December 9, 2025                                         Joseph F. Anderson, Jr.
Columbia, South Carolina                                 United States District Judge