IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brabham Oil Company, Inc., | C/A No. 5:24-cv-1170-JFA |
| Plaintiff, | |
| v. | |
| Fuel Trader Supply, LLC, Blue Earth Resources, Inc., Fuel Trader Resource Management, Inc, William R. Eaton, Scott M. Boruff, Charles B Lobetti, III, Gary W. Ford, Jr., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

## I.    INTRODUCTION

This matter is before the Court on Defendant William R. Eaton's ("Eaton" or "Defendant") Motion for Summary Judgment. (ECF No. 149). Specifically, Eaton moves for entry of Summary Judgment as to each of Plaintiff Brabham Oil Company Inc.'s, ("Plaintiff" or "Brabham") causes of action against him. *Id.* This matter has been fully briefed and is ripe for review. (ECF Nos. 149, 164 & 176). A hearing was scheduled, and argument was heard regarding this Motion on May 13, 2026. For the reasons stated herein and at the hearing, this motion is granted in part and denied in part.

## II.    FACTS

This case arises out of a longstanding business relationship between Plaintiff and Fuel Trader Supply, LLC ("FTS"), Fuel Trader Resource Management, Inc. ("FTRM"), and Blue Earth Resources, Inc. ("BERI") (collectively "Corporate Defendants"). In 2018,

Plaintiff entered into buy-sell agreements with FTS whereby Plaintiff paid FTS for the purchase of certain fuel products. (ECF No. 27, p. 6). FTS would then purchase products, sell them to customers, and repay Plaintiff for money received plus interest. *Id.* It appears this buy-sell arrangement proceeded without incident from 2018 until 2022. In September 2022, BERI acquired FTS and FTRM. Ultimately, a breakdown in this buy-sell arrangement occurred. Plaintiff sued the Corporate Defendants as well as Eaton, Gary W. Ford ("Ford"), Charles B. Lobetti ("Lobetti"), and Scott M. Boruff ("Boruff")—officers of the Corporate Defendants in their official capacities—on several causes of action. Further, Eaton and Ford filed cross claims against the Corporate Defendants for indemnity of any costs and judgments against them arising from Plaintiff's claims. (ECF Nos. 68 & 72).

Plaintiff contends that "[s]oon after [BERI] acquired [FTS] in September 2022, Eaton and the other Defendants began fraudulently moving Brabham['s] funds obtained under the buy-sell relationship to [BERI], without Brabham['s] knowledge, and began encouraging Brabham [] to execute a new buy-sell agreement so that they could continue their fraud." (ECF No. 164, p. 3). Plaintiff further contends that under the January 2023 buy-sell agreement, Brabham continued to advance monies to FTS to buy fuel; however, FTS "at the direction of [BERI] and its controlling principals, including Eaton—began diverting monies owed to Brabham [] to [BERI] and other unauthorized third-party recipients without Brabham['s] [] knowledge or consent, for their own benefit, leading to [FTS's] demise and inability to repay Brabham." *Id.* at 4.

2

During the operative period, Eaton served as BERI's COO, as well as an executive for FTS and FTRM. (ECF No. 149, p. 7). On October 21, 2022, Eaton, in his new role at FTS and FTRM, introduced himself to Brabham and informed Brabham of BERI's acquisition of the Fuel Trader Entities. *Id.* at 8. Eaton traveled to Bamberg, South Carolina to meet the Brabham executives at which time "he expressed his excitement about the acquisition and potential for growth." *Id.* "He also discussed updating the current buy-sell agreement in place to include FTRM in the profit calculations for Brabham's profit share and the potential of [Brabham] acquiring a private placement with BERI." *Id.* Eaton again met with Brabham executives on December 13, 2022, along with Boruff and Ford, "to discuss how [Brabham] could potentially benefit from the expected successes of BERI." *Id.* at 10. The details of the January 1, 2023 Buy-Sell Agreement were discussed at this meeting. *Id.* Eaton avers that while he "held the title of COO, President, and Manager of FTS and FTRM, 99% of his time until he resigned was dedicated to trying to integrate the three companies." *Id.* at 11. Eaton resigned from his position on September 19, 2023. *Id.* On the date of Eaton's resignation, he presents that Brabham had advanced $3,738,000 of the disputed $8,832,924.67 to FTS. *Id.*

Eaton moves for summary judgment as to the merits of all causes of action against him. (ECF No. 149). These causes of action specifically against Eaton include: (1) Breach of Fiduciary Duty, (2) Breach of Fiduciary Duty to Creditor, (3) Aiding and Abetting Breach of Fiduciary Duty, (4) Fraud/Misrepresentation, (5) Constructive Fraud, (6)

3

Negligent Misrepresentation, (7) Civil Conspiracy, (8) Tortious Interference with Contract, (9) Conversion, (10) Constructive Trust, and (11) Quantum Meruit/Unjust Enrichment. *Id.*

### III.     <u>**STANDARD OF REVIEW**</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

4

## IV.    DISCUSSION

Eaton argues that he is entitled to summary judgment as to the merits of all Plaintiff's claims. All arguments are addressed herein.

First, Eaton argues generally throughout his motion that he may not face individual liability for his actions as an officer of BERI and the Fuel Trader Entities because he "interacted with Plaintiff solely in his capacity as an employee of FTS and BERI." *Id.* at 14. Conversely, Plaintiff argues that Eaton may be held individually liable for his actions so long as he in some way participated in or directed the tortious act. (ECF No. 164, p. 8).

"An officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation." *Moseley v. All Things Possible, Inc.*, 388 S.C. 31, 38, 694 S.E.2d 43, 47 (Ct. App. 2010), *aff'd*, 395 S.C. 492, 719 S.E.2d 656 (2011) (quoting *Rowe v. Hyatt*, 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996)) (citation modified). "To incur liability, the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act." *Rowe,* 321 S.C. at 369, 468 S.E.2d at 650. "It is well settled that corporate officers and directors are not liable for the tortious conduct of the corporation unless they commit, participate in, direct, or authorize the commission of a tort." *Plowman v. Bagnal*, 316 S.C. 283, 286, 450 S.E.2d 36, 37 (1994), adhered to on reh'g (Oct. 19, 1994).

As discussed herein, Plaintiff has presented evidence that Eaton personally participated in or directed alleged tortious conduct. Accordingly, to the extent Eaton asks

5

this Court to generally find that he, as a corporate officer, cannot be held liable for the tortious acts of his employer, it declines to do so.

### A. Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty. (COA 5 & 10).

Eaton first requests that this Court grant summary judgment as to Plaintiff's fifth and tenth causes of action for Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty. (ECF No. 149, pp. 13–18). Eaton argues that he is entitled to judgement as a matter of law "because there is no evidence from which a jury could find an existence of a fiduciary duty between Eaton, individually, and [Brabham]." *Id.* at 14. Eaton further argues that the "evidence in the record is that [Clarence] Brabham [McCully], as owner of [Plaintiff], had limited interactions with Eaton in his capacity as an FTS officer over an approximate two-month period in which they negotiated the January 2023 Agreement on behalf of their respective entities." *Id.* at 15. Further, Eaton avers that Plaintiff cannot rely on Eaton's position as an officer and director of the Corporate Defendants to create a fiduciary duty because "Plaintiff is not a shareholder of BERI, and thus, Eaton's position as an officer/director is not alone sufficient to create a fiduciary duty." *Id.*

Conversely, Plaintiff argues that it "is Eaton's own conduct that created the [fiduciary] duty." (ECF No. 164, p. 26). Plaintiff contends that "Eaton specifically brokered the renewal of the Buy-Sell Agreement in a manner that showed he was acting in Brabham Oil's interest. In his own words, his 'goal was to lay out' a scenario that made Brabham

6

Oil comfortable with going forward. And he wanted to strike a deal that appeared as 'fair' as possible for Brabham Oil." *Id.* (citing ECF No. 164-22).

"To establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *Scott v. Catawba Valley Brewing Co.*, No. 2:18-CV-1539-RMG, 2018 WL 3966261, at *3 (D.S.C. Aug. 17, 2018) (quoting *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012)) (internal quotations omitted). "[T]o determine whether a fiduciary relationship existed, [courts] must look to the particulars of the relationship between the parties." *Armstrong v. Collins*, 366 S.C. 204, 222, 621 S.E.2d 368, 377 (Ct. App. 2005) (citation omitted). A fiduciary relationship may exist when "one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other …" *Jacobson v. Yaschik*, 249 S.C. 577, 585, 155 S.E.2d 601, 605 (1967).

A fiduciary relationship requires that "[t]he other party must have actually accepted or induced the confidence placed in him." *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct. App. 2003). "Whether or not reliance upon a representation in a particular case is justifiable or excusable, what constitutes reasonable prudence and diligence with respect to such reliance, and what conduct constitutes reckless or conscious failure to exercise such prudence, will depend upon the various circumstances involved, such as the

form and materiality of the representations, the respective intelligence, experience, age, and mental and physical condition of the parties, and the relation and respective knowledge and means of knowledge of the parties." *Thomas v. Am. Workmen*, 197 S.C. 178, 178, 14 S.E.2d 886, 888 (1941).

To establish a cause of action for aiding and abetting breach of fiduciary duty, a plaintiff must prove: (1) a breach of fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages. *Stegelin v. Pac. Life Ins. Co.*, 592 F. Supp. 3d 474, 485 (D.S.C. 2022), *aff'd sub nom. Gugel v. Pac. Life Ins. Co.*, No. 23-1073, 2024 WL 194172 (4th Cir. Jan. 18, 2024) (citing *Vortex Sports & Ent., Inc. v. Ware*, 378 S.C. 197, 662 S.E.2d 444, 448 (2008)).

Here, the first issue this Court must address in assessing these causes of action is whether Eaton owed a fiduciary duty to Brabham. At this stage, in considering the evidence presented, the Undersigned determines that Eaton owed a fiduciary duty to Brabham. Eaton primarily argues that as a mere corporate officer acting in the scope of his employment, he cannot be found to have owed a fiduciary duty to Brabham. Conversely, Brabham presents that Eaton was present and took a leading role in the discussions at the Bamberg, SC meeting where the details of the January 2023 Buy-Sell Agreement were discussed. Further, Plaintiff presents that "Eaton used his connections with Ford to entice Brabham Oil into considering a renewal of the Buy-Sell Agreement." (ECF No. 164, p. 27). Additionally, Plaintiff argues that "Eaton confirms that his and Ford's longstanding relationship and prior relationship with Brabham Oil was one of the selling points for the

8

renewal of the Buy-Sell Agreement." *Id.* Thus, while the time in which Eaton was in communication with Brabham may have been primarily in his capacity as a corporate officer of BERI and the Fuel Trader Entities, his presence in the corporate structure appeared to be a driving point in the negotiations for the operative buy-sell agreement. Thus, there is evidence to suggest that Eaton owed fiduciary duties to Brabham.

The next issue in assessing these causes of action is whether Eaton breached that duty. Brabham has presented enough evidence to move beyond summary judgment on these causes of action. Evidence regarding Eaton's actions discussed throughout this order reveals a dispute of material fact as to whether Eaton breached a fiduciary duty to Brabham. The record presents circumstantial evidence which suggests that Eaton may have been involved in approving and/or forwarding "fraudulent" invoices to Brabham indicating payment received by Brabham was secured by a fuel purchase when in fact the money may have been directed to helping BERI's finances instead. (ECF No. 164-15).

These facts also support denying Eaton's motion regarding the Aiding and Abetting Breach of Fiduciary Duty cause of action. The record indicates that even if Eaton himself was determined to not owe a fiduciary duty to Brabham, he was aware of actions that were taking place such that the contract with Brabham was not being carried out as agreed. Eaton argues that none of the Defendants owed Brabham a fiduciary duty. The Court respectfully disagrees. Certainly, FTS as the holder of the agreement, and the entity that was entrusted with these finances, can be found to have owed a fiduciary duty to Brabham. Further, while Eaton argues he did not knowingly participate in any breach, the record reveals sufficient

9

evidence to create a dispute of material fact. Brabham presents that Eaton forwarded on the potentially fraudulent invoices to Brabham. Further, intercompany communications produced by Defendants reveal Eaton, as well as the other corporate officers, were aware of the delicate financial structure of the Corporations and the necessity for this Buy-Sell Agreement to be attained. These contentions reveal a dispute of material fact over whether Eaton aided and abetted a breach of a fiduciary duty.

Accordingly, this Court denies Eaton's Motion for Summary Judgment as to Plaintiff's claims for Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty.

### B.  Breach of Fiduciary Duty to Creditor (COA 11)

Eaton argues that this Court should grant summary judgment on Plaintiff's claim for breach of fiduciary duty to a creditor under the trust fund doctrine because "Eaton did not owe a fiduciary duty to [Brabham] under the laws of the states in which BERI (Utah) and FTS (Texas) are incorporated." (ECF No. 149, p. 27). Alternatively, Eaton argues that there is no evidence he breached any alleged fiduciary duty by personally engaging in the bad faith continuation of the business. *Id.*

There is a dispute here over what law should apply to determine Eaton's liability. Eaton argues that consistent with South Carolina state courts, the Court should recognize the "internal affairs doctrine" and look to the laws of the state of incorporation of the company employing the director to determine whether a fiduciary duty is owed. *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S. Ct. 2629, 2642, 73 L. Ed. 2d 269 (1982) ("The

10

internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."). BERI is incorporated in Utah, and FTS is incorporated in Texas. Thus, Eaton argues that this Court "must look to the laws of each state to determine whether there is a fiduciary duty imposed on Eaton and owed to Plaintiff as a result of his position within BERI and FTS." (ECF No. 149, p. 28). Conversely, Plaintiff argues that South Carolina law should apply as when a dispute "reach[es] beyond the confines of the corporation," the internal affairs doctrine does not bar application of South Carolina law to the dispute. *Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640, 650, 817 S.E.2d 273, 278 (2018) (determining that veil piercing actions are such disputes that reach beyond the confines of a corporation) (citation omitted).

For a creditor to recover against a director of a Texas corporation under the trust fund doctrine, the corporation must be insolvent and have ceased operations. *See Aurelius Cap. Master, Ltd. v. Acosta*, No. 3:13-CV-1173-P, 2014 WL 10505127, at *2 (N.D. Tex. Jan. 28, 2014).

Utah law does not recognize the "trust fund" doctrine. *Passow & Sons v. Wetherbee*, 167 P. 350, 351–52 (1917); *see also Asphalt Trader Ltd. v. Beall*, No. 1:17-CV-15-DB, 2018 WL 11450168, at *3 (D. Utah July 30, 2018). However, Utah Courts have held, in the context of a bankruptcy proceeding, that principles governing a bankruptcy trustee's

11

"right to bring an action for corporate mismanagement against directors or officers of the debtor corporation for the benefit" of all the estate's creditors does "not preclude actions against corporate insiders by creditors who have been specifically harmed by their wrongful conduct." *ANR Ltd. Inc. v. Chattin*, 89 B.R. 898, 901–02 (D. Utah 1988). Utah's Supreme Court has specifically stated that "claims of a creditor that stem[] from a particular contract between the creditor and the corporation" are the sort of "direct" claims that creditors may bring without being precluded by the rule that "a corporation is [typically] the proper party to assert claims against its insiders for . . . breach of fiduciary duty to the corporation." *Warner v. DMG Color, Inc*., 20 P.3d 868, 872 (2000).

Under South Carolina law, "directors of a corporation owe the same fiduciary duties to creditors when the corporation is insolvent that directors owe shareholders when the corporation is solvent." *PCS Nitrogen, Inc. v. Ross Dev. Corp.,* 126 F. Supp. 3d 611, 621 (D.S.C. 2015).

Here, the Court is inclined to agree with the case law cited by Plaintiff and apply South Carolina law to this cause of action. This Court is not alone in determining that claims by a third-party creditor are beyond the confines of the internal affairs doctrine. *See e.g. Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09-CV-01575, 2010 WL 816344, at *10 (N.D. Ohio Mar. 4, 2010) ("the claims involve the rights of … a creditor, and are not internal corporate governance issues that are typically the subject of the internal affairs doctrine. … While Delaware has an interest in regulating its entities, Ohio's interest in protecting its creditors outweighs Delaware's interest."); *Eddystone Rail Co., LLC v.*

*Bridger Logistics*, LLC, No. CV 17-495, 2020 WL 7397793, at *3 (E.D. Pa. Dec. 17, 2020) ("The Court's conclusion that the internal affairs doctrine does not apply to claims asserted by third party creditors, like plaintiff, is supported by ample authority."); *Palladin Partners v. Gaon*, No. 05 CV 3305 WJM, 2006 WL 2460650, at *17 (D.N.J. Aug. 22, 2006) ("The Court notes that breach of fiduciary duty claims are typically subject to the internal affairs doctrine. In the instant case, however, the claims are brought by creditors not by officers, directors, or shareholders of [the company]. For this reason, the Court finds that this claim is not subject to the internal affairs doctrine . . .").

Plaintiff has presented evidence that BERI and FTS were both insolvent, or at least approaching insolvency, at the time of the alleged preferential action. Accordingly, there is evidence to suggest that FTS, BERI, and the Corporate Officers owed fiduciary duties to Brabham as a creditor. Further, the record suggests multiple instances where these duties may have been breached, discussed at length in regard to Plaintiff's breach of fiduciary duty and fraud claims. Thus, there is evidence to suggest that BERI and FTS were insolvent, and Eaton directly participated in actions that may have diverted corporate assets for the benefit of insiders or preferred creditors rather than Brabham. Accordingly, applying South Carolina law, summary judgment is denied.

13

C.  **Fraud, Negligent Misrepresentation, Constructive Fraud (COA 6, 7, & 9)**

Eaton requests that this Court grant summary judgment as to Plaintiff's sixth, seventh, and ninth causes of action for Fraud, Negligent Misrepresentation, and Constructive Fraud. (ECF No. 149, pp. 18–23).

To establish a cause of action for fraud, a plaintiff must prove that there was (1) a representation; (2) it was false; (3) it was material; (4) either  a defendant's knowledge of its falsity or a reckless disregard to its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Cantrell v. New Penn Fin., LLC*, No. 7:17-CV-01078-DCC, 2018 WL 4403392, at *3 (D.S.C. Sept. 17, 2018) (citing *Moseley v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. Ct. App. 2010)). "To establish constructive fraud, all elements of actual fraud except for the element of intent must be established." *Id.* (quoting *O'Quinn v. Beach Assocs.*, 249 S.E.2d 734, 738 (S.C. 1978)) (citation modified).

To sustain an action for negligent misrepresentation, a plaintiff must show: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that they communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered pecuniary loss as the proximate result of the plaintiff's reliance on the representation. *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 822 (D.S.C. 2011), *on*

14

*reconsideration in part* (Jan. 11, 2012) (citing *Quail Hill, LLC v. Cnty. of Richmond*, SC, 387 S.C. 223, 692 S.E.2d 499, 508 (2010)) (citation omitted). "The key difference between fraud and negligent misrepresentation is that fraud requires the conveyance of a known falsity, while negligent misrepresentation is predicated upon transmission of a negligently made false statement." *Id.* (citation modified).

Eaton argues that he "is entitled to summary judgment on these claims because there is no evidence of misrepresentation or material omission by Eaton in his individual capacity." (ECF No. 149, p. 19). Further, Eaton argues that he did not owe Brabham a duty to disclose in his individual capacity, and thus, the claims must fail. *Id.* The Court declines to generally rule that Eaton as an officer of the Corporate Defendants cannot be held liable in an individual capacity, as discussed in further detail above.

The core of Eaton's arguments for summary judgment here are that Plaintiff fails to show that Eaton made a false representation of a material fact, and that Brabham failed to exercise reasonable diligence in protecting its own interests. However, the evidence viewed in the light most favorable to Brabham supports the conclusion that Eaton took active measures, by conduct and expression, to deceive Brabham. While Plaintiff may not be able to point to a specific statement that Eaton made, Eaton's involvement with the "fraudulent" invoice along with his intercompany emails reveal his knowledge of the diminishing financial condition of the Corporate Structure and continued withholding of this information from Brabham. Eaton argues that Brabham should be prohibited from achieving the relief sought because it failed to exercise reasonable diligence in protecting

15

its own interest due to the public availability of BERI and FTS's financial records. However, these records were available in tandem with the assurances Brabham was repeatedly receiving from Corporate Officers, including Eaton. Eaton was aware they were painting a "rosy" picture for Brabham of the current state of the Fuel Trader Entities prior to negotiating the January 2023 Buy-Sell Agreement, and during its existence. While mere puffery may not be sufficient to permit a cause of action for fraud or negligent misrepresentation, knowingly withholding information that would be material to a party's participation in an agreement is sufficient to move this cause of action beyond summary judgment.

Further, the Court rejects Eaton's argument that the existence of the September 1, 2022, agreement is fatal to Plaintiff's claims. (ECF No. 176, p. 6). Eaton avers that "regardless of whether Brabham signed the January 2023 Agreement, Brabham was still obligated to two-years' worth of time under the September 2022 agreement." *Id.* (citation modified). The Court interprets this allegation to argue that because Brabham was still required to send funds under the previously negotiated buy-sell agreement, any fraud related to the January 2023 buy-sell agreement is legally deficient. The Court respectfully disagrees with Eaton's arguments. Evidence presented by Plaintiff suggests that Brabham was free to "approve or reject" opportunities under the existing buy-sell agreements. (ECF No. 164-23, p. 7).

Accordingly, Eaton's Motion for Summary Judgment as to Brabham's causes of action for Fraud, Constructive Fraud, and Negligent Misrepresentation is denied.

**D. Civil Conspiracy (COA 12)**

Eaton requests that this Court grant Summary Judgment as to Plaintiff's civil conspiracy cause of action. (ECF No. 149, pp. 24–25). Eaton argues that there is no evidence that he engaged, with fraudulent intent, to injure Plaintiff, nor that he committed overt acts in furtherance of this intent. *Id.* at 24.

To establish a cause of action for civil conspiracy, a plaintiff must prove: (1) the combination or agreement of two or more persons; (2) to commit an unlawful; act or a lawful act by unlawful means; (3) together with the commission of an overt act that is in furtherance of the agreement; and (4) damages proximately resulting to the plaintiff. *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021).

Eaton argues that "there is no evidence that he ever thought it was not permissible to use the January 2023 Agreement as a line of funding as it had been historically used by those that negotiated and operated it before his introduction to Brabham in October 2022." (ECF No. 149, p. 25). He further argues that there is no evidence that he took independent overt acts in furtherance of any conspiracy. *Id.*

The record supports that Eaton had a hand in distributing false invoices which was likely intended to persuade Brabham to continue sending over funds under the buy-sell agreement with the assumption that the funds would be secured by the purchase of fuel. However, some of these funds were ultimately directed to BERI, in contravention to the invoice disseminated, and possibly created, at the direction of Eaton. (ECF No. 164, pp. 16–17 (citing ECF No. 164-12)). Further, despite Eaton's allegation in his brief that he did

17

not know the funds garnered under the buy-sell agreement needed to be secured rather than used as a line of funding, his deposition testimony suggests otherwise: "Q: And was there ever any agreement that you're aware of with Brabham Oil Company that the advances could be unsecured? A: No." (ECF No. 164-4 Eaton Depo. at 46:18–47:8). Thus, Eaton's motion for summary judgment as to the civil conspiracy claim is denied.

### E. Tortious Interference with Contract (COA 16)

Eaton also requests that this Court grant his motion for summary judgment as to Plaintiff's claim of tortious interference with contract. (ECF No. 149, pp. 25–27).

"The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC,* 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012) (quoting *Camp v. Springs Mortgage Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993)).

Eaton argues that there is no evidence that his actions were taken outside the scope of his authority as an employee of the Corporate Defendants, nor that he intentionally procured the breach of any contract and therefore he is entitled to summary judgment on this claim. (ECF No. 149, p. 26). Conversely, Brabham argues that Eaton was aware of the terms of the Buy-Sell Arrangement but nonetheless participated in actions that directly resulted in the breach of this contract. Eaton's Motion as to this cause of action is granted. While Brabham has presented evidence that Eaton was aware of the Buy-Sell agreement,

18

there was not sufficient justification to breach that contract, and that Brabham suffered damages, it has failed to show that Eaton intentionally procured that breach. While funds may have been wrongfully exchanged between FTS and BERI in breach of the buy-sell agreement, there is no evidence that Eaton *procured* this breach. Awareness that a contract is being breached does not lead to the conclusion that the party intentionally procured that breach. Thus, Eaton's motion as to Brabham's cause of action for tortious interference with contract is granted.

### F. Conversion, Constructive Trust, Quantum Meruit, Unjust Enrichment (COA 13, 14, & 15)

Eaton requests that this Court grant his motion for summary judgment as to Plaintiff's conversion, constructive trust, quantum meruit, and unjust enrichment claims. (ECF No. 149, p. 31).

For a plaintiff to recover in an action for conversion, it must prove: (1) an interest by the plaintiff in the thing converted; (2) that the defendant converted the property for his own use; and (3) this use was without the plaintiff's permission. *May v. Peninger*, No. 2:07-CV-00864CWH, 2008 WL 509470, at *12 (D.S.C. Feb. 22, 2008) (citation omitted).

To establish a claim for constructive trust, a plaintiff must present evidence showing that the defendant obtained property which the defendant cannot in good conscious retain or withhold from another who is beneficially entitled to it. *In re Worldwide Wholesale Lumber, Inc.*, 372 B.R. 796, 813 (Bankr. D.S.C. 2007) (citing *SSI Medical Services, Inc. v. Cox*, 301 S.C. 493, 392 S.E.2d 789, 793–794 (1990)). Similarly, to prevail on a quantum

19

meruit/unjust enrichment claim, a plaintiff must establish that: (1) it conferred a benefit upon the defendant; (2) the defendant realized that benefit; and (3) the defendant retained that benefit under circumstances that make it inequitable for the defendant to retain it without paying its value. *Gillins v. Celadon Trucking Servs., Inc.*, No. 2:16-CV-00795-DCN, 2016 WL 4455018, at \*5 (D.S.C. Aug. 24, 2016) (quoting *Williams Carpet Contractors, Inc. v. Skelly*, 734 S.E.2d 177, 180 (S.C. Ct. App. 2012)). "Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of plaintiff." *Id.* (citing *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009)).

Eaton argues that he is entitled to summary judgment as to these claims because the record is clear that the only money Eaton received while operating under the 2023 January Agreement from the Corporate Defendants was his salary. (ECF No. 149, p. 31). Here, Eaton's motion as to Plaintiff's causes of action is granted because the fact that Eaton was paid a salary does not constitute him having dominion or control over the monies paid by Brabham to FTS. While Brabham presents evidence that BERI would not have had the funds to pay its employees, including Eaton, without these funds that were being misappropriated, this is not sufficient to grant their requested relief. There is no indication that Eaton's salary was directly attributable to the money provided by Brabham, nor is there any evidence Eaton himself had any control over the payroll. Thus, Eaton's motion is granted as to Plaintiff's claim of conversion, constructive trust, quantum meruit, and unjust enrichment.

20

## V.    CONCLUSION

For the reasons stated herein and discussed at the hearing, Eaton's motion for summary judgment (ECF No. 149) is granted in part and denied in part.

IT IS SO ORDERED.

May 18, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge